Filed 8/3/26  Camarillo v. Bostanchyan CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

---

| | |
|---|---|
| STEPHEN CAMARILLO,<br>        Plaintiff and Respondent,<br><br>        v.<br><br>DAVID BOSTANCHYAN,<br>        Defendant and Appellant. | C103979<br><br>(Super. Ct. No. 34-2018-00242397-CU-OR-GDS) |

---

This case involves a contentious boundary line dispute between adjoining landowners (i.e., neighbors) in a residential subdivision in Sacramento County. Defendant David Bostanchyan appeals from the judgment entered after a bench trial.  He challenges the order requiring him to remove the portion of his new driveway that encroached onto plaintiff Stephen Camarillo's property, which was based on the trial court's finding that it constituted a nuisance and trespass.  Bostanchyan argues reversal is required for various reasons, including Camarillo's failure to join an indispensable party and the trial court's erroneous adoption of the findings of a professional land surveyor, who was appointed as a referee to determine the boundary line between the subject properties.  We affirm.

1

## BACKGROUND

Before we summarize the background of this case, we observe that our review of the merits of this appeal has been hampered by Bostanchyan's noncompliance with the rules covering the format and content of appellate briefs. This includes Bostanchyan's failure to provide an adequate statement of significant facts limited to matters in the record and a sufficient summary of the relevant procedural history. (See Cal. Rules of Court, rule 8.204(a)(2)(A), (C); *People v. Ashford University, LLC* (2024) 100 Cal.App.5th 485, 503 [leading California appellate practice guide instructs appellants to accurately and fairly state critical facts free of bias before addressing legal issues].)[1]

As for the significant facts, Bostanchyan's two-paragraph statement in his opening brief is inadequate. For example, while Bostanchyan identifies the "crux" of the dispute as "largely a matter of competing surveys," the statement of facts portion of his brief includes no discussion of those surveys or the findings of the referee, who was appointed to provide an opinion about the disputed boundary line after considering relevant evidence, including the parties' competing surveys. Further, Bostanchyan's opening brief does not accurately describe how the boundary line dispute arose.

The procedural background portion of Bostanchyan's opening brief is also inadequate. The one-paragraph statement of procedural history does not identify the specific claims alleged in the operative complaint and their factual basis or describe the parties' stipulation to the appointment of a referee to assist the court in resolving the boundary line dispute. Nor does it include a summary of the arguments made by the parties in their trial briefs or any detail concerning the substance of the trial court's 11-

---

[1] Further rule references are to the California Rules of Court.

page written ruling, including the court's ruling on the objections Bostanchyan lodged to the referee's findings and opinion as to the disputed boundary line.[2]

Despite these deficiencies, we will address his claims of error. We next summarize, as best we can, the relevant background of this case beginning with a summary of the underlying legal principles to provide context for the factual and procedural background that follows.

*Legal Background*

"Under California law, the location of a disputed boundary line is proven by retracing, as nearly as possible based upon existing evidence, the footsteps of the original surveyor whose survey fixed the boundaries." (*Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 736 (*Bloxham*) [the "golden rule" of surveying is to follow the " 'footprints of the original surveyor' "].) A surveyor's expert opinion is often vital to that determination. (See *id*. at pp. 737-738 [" 'Surveyors and civil engineers, like other experts, may give testimony on questions involving matters of technical skill and experience with which they are peculiarly acquainted' "].)

" '[T]he question presented to the court in a boundary dispute is not that of making a resurvey but one of determining as a question of fact from the preponderance of expert and nonexpert evidence … the actual location of the monuments, corners or lines as actually laid out on the ground by the official surveyor.' [Citation.] 'The questions where the line run by a survey lies on the ground, and whether any particular tract is on

---

[2]    We recognize that Bostanchyan's opening brief includes a short and generalized summary of the parties' dispute and the trial court's written ruling under a heading titled "Statement of the Case." However, this portion of the brief includes no citations to the appellate record, which violates rule 8.204(a)(1)(C). The statement is not an adequate substitute for Bostanchyan's failure to provide a proper recitation of factual and procedural matters, including a clear summary of the material facts.

one side or the other of that line, are questions of fact.' " (*Bloxham, supra,* 228 Cal.App.4th at p. 737.)

In retracing the footsteps of the original surveyor, " '[t]he location of the monuments placed in connection with the original survey is of primary importance' " (*Bloxham*, *supra*, 228 Cal.App.4th at p. 742.)  Monuments are visible objects, either natural or manmade, and include things like rivers, mountains, fences, marked trees, stakes, posts, and roads.  (See *Colton v. Seavey* (1863) 22 Cal. 496, 502; *Belle Terre Ranch, Inc. v. Wilson* (2015) 232 Cal.App.4th 1468, 1472-1473.)  The physical monument established by the original surveyor, even if it should have been placed elsewhere, is "controlling." (*Claudino v. Pereira* (2008) 165 Cal.App.4th 1282, 1287.)

When the original monument cannot be found, the surveyor should endeavor to reestablish it, if possible, from traces of the monument or its accessories, or from other acceptable evidence or testimony bearing upon its original position.  (*Bloxham, supra*, 228 Cal.App.4th at pp. 745, 747-749; *Chandler v. Hibberd* (1958) 165 Cal.App.2d 39, 52, 57 (*Chandler*).)  In the field of land surveying, the phrases "obliterated corner" and "lost corner" are terms of art.  (*Bloxham*, at p. 747.)

An "obliterated corner" is one in which there are no remaining traces of the monument (or its accessories), but for which the position (or approximate position) of the monument can be located by reference to existing data or sources of information. (*Bloxham*, *supra*, 228 Cal.App.4th at pp. 747-748; *Finley v. Yuba County Water Dist*. (1979) 99 Cal.App.3d 691, 695, fn. 1; *Reid v. Dunn* (1962) 201 Cal.App.2d 612, 614, fn. 2; *Chandler, supra,* 165 Cal.App.2d at p. 52.)  By contrast, a "lost corner" is one which cannot be replaced by reference to any existing data or sources of information, and whose location can be restored only by reference to one or more interdependent corners. (*Bloxham*, at p. 748; *Finley*, at p. 696, fn. 1; *Reid*, at p. 614; *Chandler*, at p. 52.)

4

The "obliteration" of a monument does not destroy the survey nor justify a court in disregarding it where its position can be determined either from traces of the original marks or from acceptable evidence or testimony that bears upon the original position, including testimony of the interested landowners, competent surveyors, other qualified local authorities, or witnesses. (*Bloxham*, *supra*, 228 Cal.App.4th at p. 748; *Reid v. Dunn*, *supra*, 201 Cal.App.2d at p. 614, fn. 2; *Chandler, supra,* 165 Cal.App.2d at p. 52.) If there is some acceptable evidence of the original location of a monument, that position will be employed in preference to the rule that would be applied to a lost corner—application of the proportionate measurement method. (*Bloxham*, at p. 748; *Reid*, at p. 614; see *State of California v. Thompson* (1971) 22 Cal.App.3d 368, 377 ["It is settled law that the proportionate measurement method may be used only as a last resort when the original corner is 'lost' and cannot be relocated on the ground"].) The position of a "lost" corner can be restored only by proportionate measurement between one or more identified interdependent corners. (*Finley v. Yuba County Water Dist., supra,* 99 Cal.App.3d at p. 696, fn. 1; *Reid*, at p. 619; *Chandler*, at pp. 51-52; see *County of Yolo v. Nolan* (1904) 144 Cal. 445, 448-449 [explaining that lost corners are restored by putting them at an equal distance between two known corners].)

*Factual Background*

At all relevant times, the parties were neighbors; they owned adjoining parcels of real property in a residential subdivision in Orangevale, known as the Kloepfer Estates. Camarillo owned the real property located at 9387 Manette Way, also known as lot 16. Bostanchyan and his wife (Vera)[3] owned the real property immediately to the west, located at 9381 Manette Way, also known as lot 15.

---

[3]    Because Vera shares the same last name as her husband, we refer to her by her first name to avoid confusion.

The subdivision map for Kloepfer Estates was approved by Sacramento County in the late 1950's. The record reflects that the "block of interest" is bounded by Oak Avenue to the north, Main Avenue to the east, Elm Avenue to the south, and Walnut Avenue to the west. The block of interest is rectangular in shape with the long sides (Main Avenue & Walnut Avenue) running in a north-south direction. The short sides (Oak Avenue & Elm Avenue) run in an east-west direction. Manette Way also runs in an east-west direction, with Main Avenue to the east and Walnut Avenue to the west of the subject properties (i.e., lot 15 and lot 16).[4]

In the 1960's, Camarillo's father purchased lot 16 and built a home on the property and a retaining wall between the subject properties. In 1998, Camarillo became the owner of lot 16. In 2014, Bostanchyan and Vera purchased lot 15. They "remodeled the existing home from the foundation."

In 2017, as part of the remodel, Bostanchyan constructed a new concrete driveway along the eastern boundary of his property; he "widen[ed] the walkway on the east side of the house" so he could drive his RV (recreational vehicle) to the back of the property. Bostanchyan started construction in July 2017 without notifying Camarillo and without obtaining a survey to determine the boundary line separating their properties or a building permit. Over Camarillo's objections, construction was completed in or around August 2017.

*Procedural Background*

In October 2018, after Camarillo obtained a professional land survey and a dispute arose as to whether Bostanchyan's new driveway encroached onto the western portion of Camarillo's property, Camarillo filed this action against Bostanchyan. The survey was prepared by a licensed land surveyor employed by CNA Engineering, Inc. He

---

**4**     All future references to "subject properties" are references to lots 15 and 16.

6

determined that Bostanchyan's new driveway encroached onto the western portion of Camarillo's property (lot 16) by more than two feet.

The operative first amended complaint was filed in April 2019. It alleged causes of action for quiet title, nuisance, negligence, trespass, and declaratory relief. These claims were based on Camarillo's contention that Bostanchyan's new driveway encroached more than two feet onto the western portion of his property, and that the construction of the driveway resulted in the destruction and removal of a "good neighbor fence"[5] and a concrete retaining wall or "pony wall,"[6] which were located near the front of Camarillo's lot (i.e., the southwestern corner of lot 16). Camarillo sought an injunction and other relief, including a judicial determination that he was the sole lawful owner of lot 16, as determined by the survey conducted by his land surveyor.

In 2021, Bostanchyan obtained a professional land survey to determine the boundary line between the subject properties.[7] According to Bostanchyan, his surveyor determined there was a "serious problem" in that there were "monuments indicating that as many as four center lines may have been marked along Main Avenue and that … there [were] two marked center lines along Main Avenue." Bostanchyan further asserted that his surveyor was "not certain whether either of the two marked center lines [were] the

---

[5]     A "good neighbor fence" is a fence that sits directly on the property line between adjoining landowners.

[6]     A "pony wall" is a short wall, typically standing three to four feet tall. When built between lots, these low walls serve as a property marker defining the boundary of the lots. If, as here, one lot (lot 15) sits slightly higher than the other (lot 16), a pony wall also serves as a low retaining wall, stabilizing the soil and preventing erosion.

[7]     Bostanchyan's survey was prepared by a licensed land surveyor employed by Geo Land. After this appeal was filed, we granted Bostanchyan's request to augment the record to include the survey, which was submitted as evidence in the proceedings before the trial court. As Bostanchyan correctly points out, the entire document was not included in the clerk's transcript.

original center lines and public records [did] not appear to have the original." Using the "second center line" ("Centerline B" or "CTR-B"), Bostanchyan's surveyor retraced the historical monuments that created the subdivision in 1958 and determined that "Bostanchyan's property boundaries comport[ed] with [the] original, controlling boundary line from the 1950's."

Although Bostanchyan conceded that he removed the pony wall between the subject properties, he maintained that his new driveway was "laid on top of the pre-existing cement," including "up to the lip," that is, "the slight step of concrete at the base of the pony wall." Bostanchyan also claimed that the "starting point" of the survey conducted by Camarillo's surveyor—the center line of Main Avenue—was "almost certainly" in a different location than it was when the lots along Manette Way were developed in 1958. In Bostanchyan's view, the survey conducted by Camarillo's surveyor was flawed because 1) it disregarded the fact that the subdivision (Kloepfer Estates) was based upon a 1958 survey, and 2) because Camarillo's land surveyor ignored "the actions of Sacramento County's contactors during the 1980s," including their inadvertent placement of "the survey monuments in different locations" in connection with the rebuilding of Main Avenue. Bostanchyan contends these flaws were the reason why Camarillo's surveyor found that Bostanchyan's new driveway encroached two feet onto Camarillo's property. Notably, Bostanchyan did *not* claim that the "actual measurements" made by Camarillo's surveyor were inaccurate. Instead, Bostanchyan claimed that Camarillo's survey was inaccurate because the "starting point" of the survey (centerline of Main Avenue) was incorrect.

In July 2024, the parties stipulated to a trial via the submission of written briefing, declarations, and other evidence. The parties also agreed, pursuant to Code of Civil Procedure section 638, subdivision (b), to the appointment of a referee to provide the court with an "analysis as to the merits and/or defects of the parties' respective surveys pertaining to the boundary line between the [p]arties properties." Neither surveyor

8

submitted a declaration containing their findings and/or opinion about the disputed property line.

In October 2024, the parties stipulated to the appointment of Referee Jesse Fullen, a professional land surveyor, for the purpose of providing "an opinion and findings to the Court of the boundary line between [the subject properties] and the amount that [Bostanchyan's] driveway encroaches onto [Camarillo's] property, if any." As part of this stipulation, the parties agreed to provide the referee with access to their properties, the surveys prepared by their land surveyors, and any relevant, nonprivileged documents the referee determined were necessary to form an opinion and/or make findings about the disputed boundary line. The parties also agreed that the referee would not prepare his own survey. Instead, the referee would "give opinions and findings" about the boundary line based upon the preexisting surveys and other relevant evidence. The parties further agreed that the referee would file a statement of decision and recommendation (Recommended Order) with the court, the parties could file written objections to that order, and the failure to object would be deemed acquiescence to the order.[8]

In December 2024, the referee issued his Recommended Order. After describing how he made his measurements, the referee opined that Bostanchyan's driveway was 1.19 feet east of the lot 15 boundary line and therefore encroached onto the western portion of Camarillo's property (lot 16). In reaching this conclusion, the referee

_____

[8] The language of the parties' stipulation suggests that they agreed to the appointment of a general reference referee. However, based on the terms of their agreement, including the statutory provision relied upon—subdivision (b) of Code of Civil Procedure section 638—it appears that the parties agreed to the appointment of a special reference referee.

We need not and do not decide whether the parties stipulated to the appointment of a general or special reference referee. On appeal, neither party claims the referee had the authority to make a binding determination as to the disputed boundary line.

acknowledged that there were multiple centerlines along Main Avenue and explained that he considered various materials in making his measurements, including the parties' surveys, numerous parcel maps and final maps (e.g., the 1958 final map for the Kloepfer Estates), and the 1981 Sacramento County Department of Public Works survey notes. Guided by the rule that "the original survey and monuments control lot locations," the referee explained how he determined the disputed boundary line, which included use of monuments found in the "[b]lock of [i]nterest," including monuments at the centerline intersection of Oak Avenue and Main Avenue and the centerline intersection of Oak Avenue and Walnut Avenue. In relying on the monument characterized as "Centerline A" or "CTR-A" on the survey prepared by Bostanchyan's surveyor, the referee explained that "evidence of occupation" supported the use of that monument, since not doing so resulted in fences for lot lines plotting east of the mathematical location of the lot lines.

In February 2025, after Bostanchyan filed objections to the Recommended Order and the parties submitted their trial briefing and evidence, the matter was taken under submission. One of the objections lodged by Bostanchyan included his contention that the referee "appeared" to have improperly relied on the first centerline ("Centerline A" or "CTR-A") found by Bostanchyan's surveyor at the intersection of Main Avenue and Manette Way, which (in Bostanchyan's view) was *not* the original monument used when the Kloepfer Estates was originally surveyed in the 1950's. In his trial briefing, Bostanchyan requested the trial court find that Camarillo did not satisfy his burden of proof; specifically, that Camarillo failed to establish that the new driveway encroached onto his property because the original center line for Main Avenue was unknown, there

10

were multiple possible center lines, and the center line used by Camarillo's surveyor was "unlikely" to be the original center line when the subdivision was created in 1958.[9]

Several weeks later, the trial court issued a detailed written ruling. Of relevance here, the court adopted the referee's Recommended Order, finding it "credible and persuasive." Specifically, the court concluded that Bostanchyan's new driveway encroached onto the western portion of Camarillo's property by 1.19 feet, which constituted a trespass and nuisance.

In its written order, the trial court explained:

> "Although [Bostanchyan] argues that his driveway merely replaces improvements that have been in existence for a number of years, [Camarillo] has presented evidence showing the … driveway was built … beyond the established boundary line that had existed between the properties prior to [Bostanchyan's] improvement. [Citation.] [Camarillo's] Exhibit 3 shows the 'pony wall' and 'concrete lip'—which [Bostanchyan] argues marks the outermost limit of his property—were on [Camarillo's] side of the 'good neighbor fence.' [Citations.] [Camarillo] provides evidence that his father constructed the 'pony wall' and the fence on [Camarillo's] property and that these were in place on [Camarillo's] side of the fence prior to [Bostanchyan's] construction of the driveway. [Citation.] Furthermore, [Bostanchyan's] Exhibits, 3, 4, 5, 6, and 7 all appear to show the driveway that existed prior to [Bostanchyan's] reconstruction in 2017 extended only to the 'good neighbor fence[,]'" not to the far edge of the 'pony wall' and 'concrete lip,' which were on [Camarillo's] side of the

---

[9] In support of his trial brief, Bostanchyan filed a declaration. Among other things, Bostanchyan explained: "[W]hen [Vera and I] tore the house down to the foundation and created the new driveway, we simply poured new cement on top of the old cement. The new cement on top went right up [to] the edge of the old concrete. I did not extend the retaining wall farther to the east (into [Camarillo's] lot) than the old concrete. The only exception [was] near the front of the lot, but as will be explained below, even that did not extend into [Camarillo's] lot. In the end, the new driveway maintained a straight line along where the original fence used to be."

As the trial court subsequently observed in its written ruling, Bostanchyan never explained how the portion of his new driveway "near the front of the lot" did not encroach onto the southwestern portion of Camarillo's property.

11

fence.  [Citation.]  As such, [Camarillo] presents credible and persuasive evidence that [Bostanchyan's] improvements, initiated in July 2017, created new and different encroachments on the boundary line between the properties."

Later, in discussing Camarillo's trespassing cause of action and rejecting Bostanchyan's request for an equitable easement over the disputed property, the trial court stated:

"[Bostanchyan] has failed to show he is an innocent trespasser. Initially, the Court notes that [Bostanchyan] commenced construction of the driveway without notifying [Camarillo] and completed construction over [Camarillo's] objections.  [Citation.]  [Bostanchyan's] own evidence indicates that [he] only informed [Camarillo] he would be removing the fence and failed to disclose that he would be reconstructing the driveway beyond the boundary of the actual fence (to where [the] 'pony wall' and 'concrete lip' were in place).  [Citation.]  It appears that aside from measuring his lot from the assumed western boundary, [Bostanchyan] made no further efforts to ascertain whether the 'pony wall' and 'concrete lip' separating the properties was on his lot, whether it was on the boundary line, or whether it was on [Camarillo's] lot.  [Citation.]  Given the existence of a preexisting boundary line, i.e., the 'good neighbor fence,' the location of the 'pony wall' and concrete lip' on [Camarillo's] side of the 'good neighbor fence,' and [Bostanchyan's] failure to discuss the property line with [Camarillo] prior to construction, the Court concludes that [Bostanchyan] was, at best, negligent with respect to his effort to ascertain the boundary line between the properties."

Consequently, the court ordered injunctive relief by directing Bostanchyan to "remove all encroaching structures, including the easterly edge of the driveway, to conform with the boundary line [found by the referee] and restore [Camarillo's] property to its original state within … 120 … days of entry of judgment."  While the court found that Bostanchyan's negligent construction of the driveway constituted a nuisance, it denied Camarillo's request for "structural and erosion damage caused by the driveway" ($45,765) due to insufficient evidentiary support.  The court also denied Camarillo's request to quiet title based on his failure to join an indispensable party—Bostanchyan's wife (Vera).

12

In April 2025, judgment was entered in favor of Camarillo on the declaratory relief, trespass, and nuisance causes of action. Bostanchyan timely appealed.

## DISCUSSION

### I

### *Appellate Rules of Procedure*

As a preliminary matter, we summarize the rules of appellate procedure that guide our analysis.

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.] 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*).)

In order to secure the reversal of an adverse judgment, it is not enough for the appellant to establish that the trial court committed some error; the appellant must also affirmatively demonstrate the error complained of was prejudicial. (Cal. Const., art. VI, § 13; *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108; see *In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337 [" 'The burden is on the appellant in every case to show that the claimed error is prejudicial; i.e., that it has resulted in a miscarriage of justice' "].) Error is prejudicial when " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Cassim v. Allstate Ins. Co*. (2004) 33 Cal.4th 780, 800.)

The burden of overcoming the presumption of correctness includes the obligation to present argument and legal authority on each point raised. This requires more than simply stating a bare assertion that the judgment or challenged order is erroneous and leaving it to the appellate court to figure out why; it is not the appellate court's role to construct theories or arguments that would undermine the judgment or order and defeat

13

the presumption of correctness. (*Dilbert v. Newsom* (2024) 101 Cal.App.5th 317, 323; see also *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*).)

An "appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) When an appellant asserts a point but fails to support it with reasoned argument and citations to pertinent authority, the court may treat it as waived or forfeited. (*People v. Stanley* (1995) 10 Cal.4th 764, 793; *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074; see *Allen*, at p. 52 ["citing cases without any discussion of their application to the present case results in forfeiture"]; *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd*. (2002) 100 Cal.App.4th 1066, 1078 ["Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review"].) Likewise, when an appellant fails to support an argument with necessary citations to the record, the court may treat the argument as forfeited. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.) We disregard all factual assertions without citation to the record. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239.)

" ' "The rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal." ' " (*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1027; see *Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1326 [" ' "[a]s a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were [decided]" ' "].) We do not consider a new theory on appeal because "[t]o permit a change of position in the appeal 'would, in most cases, be highly prejudicial and accordingly is not permitted.' " (*Sumner Hill*, at p. 1026.)

14

With these rules in mind, we turn to Bostanchyan's appellate contentions.

## II
### *Failure to Join Indispensable Party*

Bostanchyan first argues that the judgment entered in favor of Camarillo on the declaratory relief, trespass, and nuisance causes of action must be reversed because Camarillo failed to join an indispensable party.

We deem this argument forfeited because it was not adequately raised below or on appeal. In the trial court, Bostanchyan did not argue in his opening trial brief that Camarillo could not prevail on his declaratory relief, trespass, or nuisance causes of action based on his failure to join an indispensable party. Instead, Bostanchyan's indispensable party argument was limited to Camarillo's quiet title cause of action. In his closing trial brief, under a heading titled "The Appropriate Remedy," Bostanchyan stated in passing and without further elaboration: "[I]t is hard to see how this Court can grant any manner of an injunction in favor of [Camarillo]. Vera … is not named in the action and neither are any of the neighbors who are undoubtedly affected."

Later in that same brief, Bostanchyan asserted: "[T]he Court should hold that the failure to include indispensable parties is fatal to [Camarillo's] claims because complete relief cannot be realized against those that would be affected by any ruling [that finds an encroachment]." Except for a citation to one case, the point was otherwise undeveloped; Bostanchyan made no attempt to explain how and why the case he cited supported his position. As a result, the trial court could have easily overlooked the argument or reasonably determined that it was forfeited because it was inadequately briefed.

In any event, we conclude the issue was not preserved for appellate review. It was not raised and developed in Bostanchyan's written filings in the trial court, nor was it considered or ruled upon, by the trial court. (*Brockman v. Kaiser Foundation Hospitals* (2025) 114 Cal.App.5th 569, 591-592 & fn. 12; see *Wisner v. Dignity Health* (2022) 85 Cal.App.5th 35, 44 [declining to reach argument where it was raised for the first time on

appeal and thus not "developed before, nor considered or ruled upon by, the trial court"]; *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 770 [undeveloped argument raised in a "cursory manner" and buried within another argument did not adequately raise the issue in the trial court or preserve the issue for appeal].)

For similar reasons, we conclude Bostanchyan has forfeited the issue on appeal. In his opening brief, Bostanchyan includes citation to authority for general abstract legal principles but fails to adequately explain how and why those principles support reversal under the facts of this case. In short, because this claim of error is undeveloped, we decline to consider it. (*People v. Stanley, supra,* 10 Cal.4th at p. 793; *Salas v. California Department of Transportation*, *supra*, 198 Cal.App.4th at p. 1074; see *Allen, supra,* 234 Cal.App.4th at p. 52 ["citing cases without any discussion of their application to the present case results in forfeiture"]; *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd*., *supra*, 100 Cal.App.4th at p. 1078 ["Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review"].)[10]

---

**10** In his reply brief on appeal, Bostanchyan suggests that he did not forfeit his indispensable party argument because the "failure to join an indispensable party constitutes a jurisdictional defect which may be raised initially on appeal." We are unpersuaded. A claim that a party absent from the proceeding was indispensable "is not cognizable on appeal unless it [was] appropriately raised in the trial court or there is some compelling reason of equity or policy which warrants belated consideration." (*Jermstad v. McNelis* (1989) 210 Cal.App.3d 528, 538.) " '[T]he failure to join an "indispensable" party is *not* "a jurisdictional defect" in the fundamental sense; even in the absence of an "indispensable" party, the court still has the power to render a decision as to the parties before it which will stand.' " (*Reliant Life Shares, LLC v. Cooper* (2023) 90 Cal.App.5th 14, 55, italics added.)

On appeal, Bostanchyan has made no effort to explain how and why this justification applies here. Nor has he advanced any compelling reason which warrants consideration of his belated argument. Moreover, having reviewed the record, we

16

Even if we were to overlook forfeiture, Bostanchyan has not shown prejudicial error based on Camarillo's purported failure to join an indispensable party. (See *Jameson, supra*, 5 Cal.5th at p. 609; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) In his opening brief, Bostanchyan did not identify, let alone discuss, the various requirements and factors courts consider in determining whether an absent party is an indispensable party. (See *American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 296 [listing the criteria used to make an indispensable party determination].) Instead, he simply asserts that the "injunction remedy issued by the trial court"—removal of the encroaching portion of his new driveway—"necessarily affects" his wife's property rights. This showing is insufficient to demonstrate that reversal is required based on the failure to join an indispensable party.

Bostanchyan makes no effort to explain how and why he did not adequately represent Vera's interests in this action. It is well-established that an absent party will not be considered "indispensable" where a party already before the court adequately represents the absent party's interests. (See *Citizens Assn. for Sensible Development of Bishop Area v. County of Inyo* (1985) 172 Cal.App.3d 151, 161 [landowner would have been a proper party but was not indispensable because developer (real party in interest) had "ably argued" on behalf of landowner's interests]; *Save Berkeley's Neighborhoods v. Regents of University of California* (2021) 70 Cal.App.5th 705, 721-724 [developers were not indispensable parties because the regents had similar interests in having project proceed in timely manner and adequately represented developers' interests].)

---

conclude that the failure to join Vera did not deprive the trial court of the power to render an effective judgment between Bostanchyan and Camarillo on the declaratory relief, trespass, or nuisance causes of action.

17

## III
### *Declaratory Relief*

Next, in a related argument, Bostanchyan contends that the trial court erroneously ruled in favor of Camarillo on the declaratory relief cause of action. Bostanchyan contends that because the trial court ruled against Camarillo on the quiet title cause of action based on his failure to join an indispensable party, it was improper for the court to declare Camarillo "the 100% fee simple owner of [lot 16] in accordance with the boundary line as determined in the Recommended Order." In support of his position, Bostanchyan argues that the case relied upon by the trial court— *XPO Logistics Freight, Inc. v. Hayward Property, LLC* (2022) 79 Cal.App.5th 1166—is distinguishable.

As an initial matter, because this argument was not adequately raised in the trial court or on appeal, we deem it forfeited. (See *Mendoza v. Trans Valley Transport, supra*, 75 Cal.App.5th at p. 770 [undeveloped point did not adequately raise the issue in the trial court or preserve the issue for appeal]; *Allen, supra*, 234 Cal.App.4th at p. 52 [argument forfeited for failing to adequately raise on appeal].)[11] As the trial court observed in its written ruling, Bostanchyan did not "directly address" the declaratory relief cause of action in the briefing he submitted in connection with the bench trial.

Forfeiture aside, we see no basis for reversal. Section 1060 of the Code of Civil Procedure provides that a party may bring an action for "declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property." It also provides that "the court may make a binding declaration of these rights or duties" (*ibid*.) and that the "declaration may be either affirmative or negative in form and effect" (*ibid*.). In an action for declaratory relief, the proper function of the court is to make a full and

---

[11]    For the same reasons, we deem forfeited Bostanchyan's suggestion that reversal as to the declaratory relief cause of action is required because "Camarillo's pleading is not worded broad enough to encompass any other determination of rights other than having Camarillo's survey be deemed as having a correct description of Camarillo's property." This issue was not adequately raised in the trial court or on appeal.

complete declaration, disposing of all questions actually involved in the case as between all of the respective parties. (*Amerson v. Christman* (1968) 261 Cal.App.2d 811, 823.)

Likewise, "[a] quiet title action seeks to declare the rights of the parties in realty. A trial court should ordinarily resolve such dispute. This accords with the rule that a trial court should not dismiss a regular declaratory relief action when the plaintiff loses, but instead should issue a judgment *setting forth the declaration of rights and thus ending the controversy*." " ' "The object of the action is to finally settle and determine, *as between the parties*, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to." ' " (*Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 305, italics added.)

A plaintiff bringing a quiet title action must name as defendants all "persons having adverse claims" to the property that are of record, known to the plaintiff, or reasonably apparent from an inspection of the property. (Code Civ. Proc., §§ 762.010, 762.060, subd. (b).) Indeed, a quiet title judgment may not be entered without joining all parties who have an interest in the property. (See *Ranch at the Falls LLC v. O'Neal* (2019) 38 Cal.App.5th 155, 173, 178-180 [individual homeowners deemed necessary/indispensable parties to quiet title action seeking access easement over private streets in gated subdivision].)

Here, Camarillo (via the operative complaint) sought to quiet title to the disputed property and declaratory and injunctive relief. Camarillo requested a judicial determination that he held 100 percent fee simple ownership in lot 16, as determined by the boundaries set forth in the survey prepared by his surveyor. Camarillo asked for a "judicial determination of his rights and duties, and a declaration as to his entitlement … to … ownership based on the proper boundary lines as it pertains to [lot 16]." Although the trial court denied Camarillo's request to quiet title due to his failure to join an indispensable party (Vera), it declared "as between [Camarillo] and [Bostanchyan] *only*,

19

[Camarillo] is the 100% fee simple owner of [lot 16] in accordance with the boundary line as determined [by the referee] in the Recommended Order." (Italics added.)

In so ruling, the trial court cited *XPO Logistics Freight, Inc. v. Hayward Property, LLC*, *supra*, 79 Cal.App.5th at page 1180 for the proposition that "judgment for declaratory relief regarding property ownership as between the named parties is proper even if there is insufficient basis to grant quiet title to the plaintiff." To the extent Bostanchyan contends the trial court erred in relying on *XPO Logistics Freight* or otherwise committed reversible error by ruling in favor of Camarillo on his declaratory relief cause of action, we disagree. Under the circumstances presented, it was proper for the trial court to determine the boundary line between the subject properties.[12]

## IV
### *Recommended Order*

We conclude Bostanchyan has forfeited his undeveloped contention that the trial court erred in adopting the referee's Recommended Order. In his opening brief, Bostanchyan failed to present meaningful legal analysis supported by citation to pertinent authority and evidence in the record. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.) Instead, Bostanchyan argues, without citation to any authority, that the referee used the wrong standard in reaching his conclusion as to the disputed boundary line. Bostanchyan further argues the referee erred by failing to determine whether the "missing monuments," which the original survey relied upon to establish the property lines of the Kloepfer Estates subdivision in the late 1950s, were "lost or obliterated" or could be "re-established." Although unclear, Bostanchyan appears to claim, as he did in the trial

---

[12] We reject Bostanchyan's suggestion that the judgment on the declaratory relief cause of action must be reversed because the injunction was issued as a remedy for that cause of action. The record reflects that the injunction was granted as a remedy for the trespass cause of action, not the declaratory relief cause of action. Bostanchyan provides no reasoned legal analysis demonstrating that reversal is required on this basis.

court, that the referee improperly relied on a survey conducted by Sacramento County when it rebuilt Main Avenue in the 1980s.

It is a fundamental rule of appellate procedure that when, as here, "a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' " (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; see *Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1117 ["failure of appellant to advance any pertinent or intelligible legal argument … constitute[s] an abandonment of the [claim of error"].) "Issues do not have a life of their own: if they are not raised or supported by [substantive] argument or citation to authority, we consider the issues waived." (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.) Further, it is not our role to construct theories or arguments that would undermine the judgment and defeat the presumption of correctness. (*Dilbert v. Newsom, supra*, 101 Cal.App.5th at p. 323.) Given Bostanchyan's deficient briefing, we need not say anything further about this issue.

But even if we were to consider the issue, we would conclude that Bostanchyan failed to carry his burden to affirmatively demonstrate prejudicial error. (See *Jameson*, *supra*, 5 Cal.5th at 609; *Denham v. Superior Court, supra*, 2 Cal.3d at p. 564.) His argument on appeal simply amounts to a disagreement with how the referee determined the disputed boundary line, without any substantive legal analysis showing how and why the trial court's adoption of the referee's Recommended Order constitutes reversible error. As we have noted, Bostanchyan's opening brief cites no legal authority in support of his conclusory claim of error.

## V
### *Superior Title*

Finally, Bostanchyan argues that the judgment in favor of Camarillo on the declaratory relief, trespass, and nuisance causes of action must be reversed because Camarillo failed to establish superior title to the disputed property. According to

21

Bostanchyan, the trial court erred in concluding that Camarillo presented sufficient evidence to support a finding that he owned the property. In making this argument, Bostanchyan claims that the referee's findings and opinion as to the boundary line are insufficient as a matter of law because the referee did not rely on the original survey monuments established by the 1958 survey, and because there was no evidence presented that the missing monuments were "lost" or "obliterated" and that the centerline along Main Avenue could be reestablished using proper survey methods in light of the missing monuments.

We are unpersuaded that reversal is required. As we have discussed, the parties stipulated to the appointment of a referee because there were competing surveys as to the location of the disputed boundary line. The parties agreed that the referee would make a finding on this matter based on the parties' surveys and other relevant evidence. After considering objections to the referee's Recommended Order, the trial court adopted it, finding that Bostanchyan's driveway encroached onto the western portion of Camarillo's property by more than one foot (1.19). In so finding, the court rejected the arguments Bostanchyan now offers on appeal. The court stated: "[The] Recommended Order makes the requisite findings needed to support the determination of the boundary line at issue in this case and that [Camarillo] has presented sufficient evidence to meet his burden to support encroachment. The Court concludes that the referee's Recommended Order is credible and persuasive." On appeal, Bostanchyan has failed to demonstrate reversible error. He has not provided substantive legal analysis showing that the referee's Recommended Order was insufficient as a matter of law or that there was insufficient evidence to support the judgment.

Under the substantial evidence standard, we do not reweigh evidence. Instead, we view the evidence in the light most favorable to the prevailing party, giving that party the benefit of every reasonable inference and resolving all conflicts in its favor. (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660.) " 'It is an elementary, but often

22

overlooked principle of law, that when a [judgment] is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the [trier of fact]. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. [Citations.]' [Citations.] 'The fact that it is possible to draw some inference other than that drawn by the trier of fact is of no consequence.' " (*Bloxham, supra,* 228 Cal.App.4th at p. 739.) Our job is only to see if substantial evidence exists to support the verdict in favor of the prevailing party, not to determine whether substantial evidence might support the losing party's version of events. (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1245.)

Here, it was the duty of the trial court to ascertain the location of the boundary line between the subject properties. (*Bloxham, supra,* 228 Cal.App.4th at pp. 738-739.) In performing this duty, it was the function of the trial court to weigh and evaluate the evidence and make a finding of fact as to the disputed boundary line. (*Id*. at pp. 737-738.) In doing so here, the trial court relied on the findings in the Recommended Order, which constitute substantial evidence to support the trial court's judgment. (See *Bloxham*, at p. 738.) To the extent the trial court resolved conflicts in the evidence adversely to Bostanchyan, we cannot disturb those determinations on appeal. (See *Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 874 [as long as there is substantial evidence, the appellate court must affirm, even if other substantial evidence supports a different result].)

## DISPOSITION

The judgment is affirmed.  Camarillo shall recover his costs on appeal.  (Rule 8.278(a).)

/s/
WISEMAN, J.*

We concur:

/s/
ROBIE, Acting P. J.

/s/
MESIWALA, J.

---

*     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.